IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| WILLIAM ANDERSON, | ) |
| :--- | :--- |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 23-00553-CV-W-WBG |
| JACKSON COUNTY, MISSOURI, et al., | ) ) ) |
| Defendants. | ) |

## ORDER

Pending is a motion to dismiss filed by Defendants Jackson County, Missouri; Jackson County Sheriff's Department; and Robert Knudsen. Doc. 27.[1] For the following reasons, the motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.

### I. BACKGROUND[2]

On August 6, 2018, Plaintiff William Anderson travelled on a city bus to 63rd Street and Brookside in Kansas City, Missouri. Doc. 25 at 6. After conducting his regular daily activities in Brookside, Plaintiff waited for a ride home at the bus stop located at 63rd and Brookside. *Id*. Once the bus arrived, Plaintiff began to board "when he had a sudden bowel movement." *Id*. at 6, 9. The bus operator told Plaintiff not to get on the bus, and the operator reported the situation to law enforcement. *Id*.

After being denied entry on the bus, Plaintiff sat under the "bus stop shelter." *Id*. at 6. He was approached by Jackson County Sheriff's Department ("JCSD") Deputy Robert Knudsen and

---

[1] Also pending is a motion to dismiss filed by the other Defendants in this matter. Doc. 31. As that motion remains pending, it will be addressed in a subsequent order and is not addressed herein.

[2] Plaintiff's Amended Complaint (Doc. 25) provides the factual information in this section. At this stage, Plaintiff's allegations must be accepted as true and viewed in the light most favorable to Plaintiff. *See infra*, section II.

Kansas City, Missouri Police Department ("KCPD") Officer Christopher Sticken.[3] *Id*. at 4-7. Knudsen and Sticken told Plaintiff he should leave the bus shelter.[4] *Id*. at 7. Plaintiff told the officers he was waiting for the bus. *Id*. Knudsen and Sticken then informed Plaintiff that if he did not leave the bus shelter, he would be charged with trespassing. *Id*. at 7, 9. Plaintiff was advised to walk home. *Id*. at 7. Plaintiff attempted to explain to Knudsen and Sticken that he is physically unable to walk the ten blocks to his home because he has cerebral palsy, which affects his physical mobility. *Id*. at 7, 10.

Knudsen and Sticken insisted Plaintiff leave the bus shelter, and Knudsen stated he was tired of people like Plaintiff, presumably because he is physically challenged. *Id*. at 7, 10, 15. Plaintiff stretched out his arms and asked Knudsen and Sticken for help off the seat at the bus shelter. *Id*. at 7, 10. Knudsen and Sticken then "grabbed Plaintiff by the arm and slammed him face down into the ground." *Id*. at 7, 10, 12-13, 16. Plaintiff's eyeglasses fell off his face, and his right shoe fell off his foot. *Id*. at 7, 10.

Knudsen and Sticken knelt on Plaintiff's right side and placed him under arrest. *Id*. at 8, 10-13. Due to the officers' actions, Plaintiff suffered fractured ribs and an injured knee. *Id*. 8, 10-13, 16. Plaintiff told Knudsen and Sticken that he was in pain and wanted to go to the hospital. *Id*. at 8, 10. His request was denied. *Id*. at 8, 10, 16.

Plaintiff again attempted to explain his physical disability. *Id*. at 8. Knudsen and Sticken told Plaintiff that they did not care about his disability, and they treat individuals with physical disabilities in the same manner as individuals who do not have physical disabilities. *Id*. The

---

[3] Officer Christopher Sticken is also named as a Defendant in Plaintiff's Amended Complaint, but this Order only pertains to the motion to dismiss filed by Defendants Jackson County, Missouri; Jackson County Sheriff's Department, and Robert Knudsen.

[4] Throughout his Amended Complaint, Plaintiff often alleges both Knudsen and Sticken made certain statements or engaged in certain activities. This Order describes the events as alleged by Plaintiff.

officers hoisted Plaintiff into a transport van where he was handcuffed to a bar and transported to the Jackson County Detention Center. *Id*.

Plaintiff was booked at the Jackson County Detention Center and charged with trespassing and assault. *Id*. at 8, 10. He told a detention officer that he was in pain and wanted to go to the hospital. *Id*. at 8. The detention officer denied the request. *Id*. Further, detention center personnel did nothing when Plaintiff informed them he needed to take a medication. *Id*. at 9. Plaintiff was not given the opportunity to call his family, and "he had no knowledge to request a phone call" because he had never been arrested. *Id*.

On August 8, 2018, his third day in the detention center, Plaintiff, with the assistance of another inmate, made a phone call. *Id*. On the same day, Plaintiff was released on his own recognizance. *Id*. Once outside the detention center, Plaintiff was robbed of his cellphone. *Id*. On August 9, 2018, Plaintiff was treated at Truman Medical Center for the injuries he sustained from the arrest. *Id*.

On August 5, 2023, Plaintiff filed this matter. Doc. 1. On February 14, 2024, Plaintiff filed an Amended Complaint against Defendants Jackson County, Missouri ("Jackson County"); JCSD; Robert Knudsen; Cathy Dean; Dawn Cramer; Tom Whittaker; Mark Tolbert; Quinton Lucas; David Kenner; Stacey Graves; and Sticken. Doc. 25. Plaintiff asserts claims under 42 U.S.C. § 1983. *Id*.

Relevant to the motion filed by Jackson County, JCSD, and Knudsen, Plaintiff alleges Knudsen used excessive and unreasonable force (Count I); Jackson County and JCSD have established a policy or custom of failing to "adequately discipline, train, investigate, sanction, supervise, and retrain" employees "to respect the constitutional rights of citizens" (Count II); Knudsen deprived Plaintiff of access to medical care and was deliberately indifferent to Plaintiff's

medical needs (Count III); and Jackson County and JCSD established a policy or custom of failing to provide adequate medical care to individuals in their custody or control (Count IV). *Id*. at 9-18.

On February 27, 2024, Jackson County, JCSD, and Knudsen moved to dismiss all claims against them. Doc. 27. They aver the claims against JCSD should be dismissed because it is not a separate legal entity subject to suit; the claims against Jackson County should be dismissed because Plaintiff failed to plead a claim for liability; and the claims against Knudsen should be dismissed because he is entitled to qualified immunity. *Id*. at 3-12. Plaintiff did not respond to the motion, and the time for doing so has passed. L.R. 7.0(c)(2).

## II. DISCUSSION

### A. Claims against JCSD

The Eighth Circuit and this Court have repeatedly held a sheriff's department or a police department is not a separate legal entity subject to suit; rather, a sheriff's department or police department is a division of the county or city in which it sits. *Diggs v. City of Osceola*, 270 F. App'x 469, at *1 (8th Cir. 2008); *De La Garza v. Kandiyohi Cnty. Jail, Corr. Inst.*, 18 F. App'x 436, 437 (8th Cir. 2001); *Ketchum v. City of W. Memphis*, 974 F.2d 81, 82 (8th Cir. 1992); *Gravitt v. Pettis Cnty. Sheriff's Off.*, No. 2:21-CV-04005-NKL, 2021 WL 5532691, at *1 (W.D. Mo. Apr. 19, 2021). JCSD is not a separate legal entity capable of being sued. *Leaming v. Jackson Cnty., Mo.*, No. 03-0940-CV-S-SWH, 2005 WL 8159002, at *2 (W.D. Mo. July 26, 2005) (dismissing claims against JCSD because it was not a legal entity subject to suit under section 1983). Instead, JCSD is a division of Jackson County, which is also named as a defendant in this case. Therefore, the Court **GRANTS** JCSD's motion to dismiss and **DISMISSES** all claims against JCSD.

B.    **Claims Against Jackson County**

In his Amended Complaint, Plaintiff claims Jackson County violated his rights under the Fourth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983 and *Monell*.[5] Doc. 25 at 13-15, 17-18.  More specifically, he claims Jackson County failed to provide adequate medical care, and failed to adequately discipline, train, investigate, sanction, supervise, and retrain its employees. *Id*.  In the pending motion, Jackson County argues all claims against it should be dismissed because Plaintiff fails to plead sufficient factual allegations to support a *Monell* claim.  Doc. 27 at 3-8.

1.    **Standard for Failure to State a Claim**

To state a claim for relief, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  While the Rule 8 pleading standard does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The pleading standard is not satisfied when a pleading contains mere "labels and conclusions," "formulaic recitation of the elements" of a claim, or "naked assertion[s]" lacking "further factual enhancement." *Id*. (citing *Twombly*, 550 U.S. at 555, 557).

To survive a motion to dismiss for failure to state a claim, the complaint must contain sufficient factual matter that, when accepted as true, makes relief plausible on its face. *Iqbal*, 556 U.S. at 678.  "The plausibility standard requires a plaintiff to show at the pleading stage that success on the merits [of the claim] is more than a 'sheer possibility.'" *Knowles v. TD Ameritrade Holding Corp.*, 2 F.4th 751, 757 (8th Cir. 2021) (quoting *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009)).  "[A] well-pleaded complaint may proceed even if it strikes a savvy

---

[5] *Monell* is a reference to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely." *Id*. at 757 (quoting *Braden*, 588 F.3d at 594) (internal quotation marks omitted).

Several tenets apply when considering a motion to dismiss. First, a court must accept all factual allegations made in the complaint as true. *Braden*, 588 F.3d at 594. Second, "the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Id*. Third, all inferences are to be considered in the light most favorable to the non-moving party. *Id*. at 595 (observing "*Twombly* and *Iqbal* did not change this fundamental tenet of Rule 12(b)(6) practice."). Fourth, at the pleading stage, there is no requirement for direct evidence, and factual allegations may be circumstantial. *McDonough v. Anoka Cnty.*, 799 F.3d 931, 945 (8th Cir. 2015). Finally, evaluating a complaint is context specific, and a court must "draw on its judicial experience and common sense" when considering a motion to dismiss. *Braden*, 588 F.3d at 594 (quoting *Iqbal*, 556 U.S. at 679).

### 2. Liability Under Section 1983 and *Monell*

"Section 1983 provides a mechanism by which aggrieved plaintiffs may sue a state actor for violation of their constitutional rights." *Stockley v. Joyce*, 963 F.3d 809, 817 (8th Cir. 2020) (citation omitted). Pursuant to *Monell v. Department of Social Services of City of New York*, the United States Supreme Court found Congress intended for "municipalities and other local government units to be included among those persons to whom § 1983 applies." 436 U.S. 658, 690 (1978). Local governing bodies, including counties, can be sued under section 1983 for monetary, declaratory or injunctive relief when an unconstitutional act has resulted from local government policy, regulation, or custom. *Id*.; *McGautha v. Jackson Cnty., Mo.*, 36 F.3d 53, 55-57 (8th Cir. 1994).

6

However, a local governing body cannot be held liable solely based on a theory of respondeat superior or simply employing an alleged tortfeasor. *Monell*, 436 U.S. at 691-701. A municipal or local government policy[6] or custom[7] must cause an employee to violate another's constitutional rights. *Id*. When bringing a section 1983 claim against a local governing body based on policy, a plaintiff must demonstrate that an "action pursuant to [an] official municipal policy . . . caused a constitutional tort." *Stockley*, 963 F.3d at 823 (quoting *Monell*, 436 U.S. at 691). While "a single unconstitutional act may not always suffice to support a claim of municipal liability, an unconstitutional governmental policy [may] be inferred from a single decision taken by the highest officials responsible for setting policy in that area of the government's business." *Id*. (quoting *Bernini v, City of St. Paul*, 665 F.3d 997, 1007 (8th Cir. 2012)).

When bringing a section 1983 claim based on custom, a plaintiff must demonstrate: "existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the government entity's employees," "[d]eliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct," and the "plaintiff was injured by acts pursuant to the governmental entity's custom." *Johnson v. Douglas Cnty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013) (citation omitted). The claimant must show municipal or local government policy or custom was a moving force behind the employee's alleged constitutional violation. *Id*. Jackson County argues Plaintiff's *Monell*

---

[6] Policies include "decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011); *see also Goodwin v. Vill. Of Oakview*, No. 19-00009-CV-W-ODS, 2019 WL 1344727, at *4 (W.D. Mo. Mar. 25, 2019) (citation omitted).

[7] A custom is shown "only by adducing evidence of a continuing, widespread, persistent pattern of unconstitutional misconduct." *Jenkins v. Cnty. Of Hennepin*, 557 F.3d 628, 634 (8th Cir. 2009) (citation and internal quotations omitted); *see also Goodwin*, 2019 WL 1344727, at *4 (citation omitted). "Congress included customs and usages [in § 1983] because of the persistent and widespread discriminatory practices of state officials . . . . Although not authorized by written law, such practices of state officials could well be so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Monell*, 436 U.S. at 691 (internal citation omitted).

7

claims should be dismissed because Plaintiff fails to plead factual allegations showing his injuries resulted from a Jackson County policy or custom. Doc. 27 at 3-8.

### 3. Plaintiff's Allegations

#### (a) Denying Medical Care to Individuals in Custody

Jackson County asserts Plaintiff failed to allege any facts demonstrating Jackson County has an official policy or custom of depriving inmates of adequate medical care. Doc. 27 at 5. Rather, Jackson County maintains Plaintiff's Amended Complaint contains "broad statements about unconstitutional policies [or customs] . . . without providing facts to support the allegations or a causal link between [a Jackson County] policy or custom and the constitutional injury." *Id*.

Plaintiff's Amended Complaint states Jackson County, which operates JCSD, established an "official policy, custom and/or action regarding providing medical treatment to people in the custody or control of" JCSD. Doc. 25 at 13, 15, 17. He also alleges Jackson County's "official policy, custom and/or action was insufficient to provide prompt, constitutionally adequate medical care to those in [JCSD's] custody." *Id*. at 17. Plaintiff claims Jackson County's "culture of permissive illegal conduct caused [ . . . ] denial of medical services, and the bullying of a disabled 73-year-old man" resulting in "physical pain, humiliation, embarrassment and anxiety." *Id*. at 15.

Plaintiff alleges he expressed his pain and need for medical care to Knudsen, Sticken, and a detention officer at the Jackson County Detention Center. *Id*. at 8. Despite Plaintiff communicating his pain to and requesting medical care to three individuals, they repeatedly denied his requests. *Id*. Further, Plaintiff "informed personnel at the detention center that he was on medication which he needed" but this communication was "to no avail." *Id*. at 9. Plaintiff contends he "suffered emotional and physical damages" because he was denied medical care. *Id*. at 17.

At this stage, the Court is limited to reviewing the allegations in the Amended Complaint, which must be construed as true, and all inferences must be drawn in the light most favorable to Plaintiff. Based on the foregoing analysis, the Court finds Plaintiff's Amended Complaint contains sufficient factual allegations showing success on the merits of his claim is more than a sheer possibility. Accordingly, the Court **DENIES** Jackson County's motion to dismiss this claim.

### (b) Failure to Discipline, Train, Investigate, Sanction, and Supervise

Jackson County also asserts Plaintiff failed to allege any facts demonstrating Jackson County has an official policy or custom of failing to properly train or supervise employees. Doc. 27 at 7. "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). A local government's decision not to train its employees "must amount to deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Id*. (citation omitted). Untrained employees engaging in "[a] pattern of similar constitutional violations . . . is ordinarily necessary to show deliberate indifference." *Folkerts v. City of Waverly*, 707 F.3d 975, 982 (8th Cir. 2013) (citation omitted).

Plaintiff's Amended Complaint alleges Jackson County is the final arbiter, decisionmaker, and supervisor "of a policy and practice" of failing to "adequately discipline, train, investigate, sanction, supervise, and retrain sheriff deputies." *Id*. at 13. He further avers this "engrained pattern of callous conduct" is evidenced by Knudsen allegedly telling Plaintiff he "was tired of people like him referring to [Plaintiff's] disability, refus[ing] to contact EMS," and "casually charging [Plaintiff] with trespassing and assault . . . without any fear whatsoever that his conduct would be

9

scrutinized." *Id*. at 15. In addition, Plaintiff points out Knudsen "has no fear of internal reprisals for violating individuals' civil rights . . . ." *Id*. at 14.

He contends "deputies routinely fabricate reports to cover up the use of excessive force" and there is a "consistent failure by Jackson County [ . . . ] to intervene and actively prevent the infringement." *Id*. Further, he asserts there is an "ongoing failure of Jackson County to intervene and correct the abuse of power by sheriff's deputies" and instead has "caused, encouraged, condoned and allowed sheriff's deput[ies] . . . to engage in abusive conduct without fear of retribution." *Id*.

When construing all factual allegations in Plaintiff's Amended Complaint as true and drawing all inferences in the light most favorable to Plaintiff, the Court finds Plaintiff's Amended Complaint contains sufficient factual allegations to state a claim that Jackson County has a policy or custom of failing to discipline, train, investigate, sanction, and supervise employees. Accordingly, the Court **DENIES** Jackson County's motion to dismiss this claim.

    **(c)**  **Notice of Alleged Unconstitutional Acts**

Jackson County also argues Plaintiff failed to allege facts demonstrating Jackson County received any notice of the alleged pattern of unconstitutional acts committed by its employees. Doc. 27 at 8. To plead a section 1983 claim for local government liability based on custom, a plaintiff must show "[d]eliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct." *Johnson*, 725 F.3d at 828 (citation omitted). Absent some showing of notice, a local government's officials cannot be deliberately indifferent to its employees' unconstitutional conduct. *See Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1217 (8th Cir. 2013) (citation omitted).

In the Amended Complaint, Plaintiff alleges Jackson County "failed to make any corrective measures to remedy" constitutional violations resulting from their "deficient custom or policy" concerning denial of medical care to individuals in custody. Doc. 25 at 18. Further, Plaintiff states Deputy Knudsen "had no fear of internal reprisals for violating [an] individual[']s civil rights" by "subjecting Plaintiff [to] force that was more than necessary to arrest a 73-year-old, disabled man" and "failing to provide medical assistance he needed." *Id*. at 14. Plaintiff also asserts the Jackson County Sheriff's Department "maintains an Internal Affairs Division (IAD) . . . which is purposefully and intentionally ineffective in investigating allegations of excessive force . . . and various other violations of individual's [sic] rights time after time." *Id*.

When construing all factual allegations in Plaintiff's Amended Complaint as true, and drawing all inferences in the light most favorable to Plaintiff, the Court finds Plaintiff's Amended Complaint contains sufficient facts suggesting Jackson County received notice of alleged unconstitutional acts committed by its employees and were deliberately indifferent to the acts or tacitly authorized them. Therefore, the Court **DENIES** Jackson County's motion to dismiss all *Monell* claims against it.

C. **Claims Against Knudsen**

Knudsen argues the claims against him should be dismissed because he is entitled to qualified immunity. Doc. 27 at 8-11. An affirmative defense, such as qualified immunity, can provide the basis for dismissal under Rule 12(b)(6) if it is apparent on the face of the complaint. *Vandevender v. Sass*, 970 F.3d 972, 975 (8th Cir. 2020). Qualified immunity shields government officials performing discretionary functions from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id*. (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity

11

Case 4:23-cv-00553-WBG   Document 37   Filed 06/18/24   Page 11 of 16

is not merely a defense to liability; it is complete immunity from a suit. *Id*. As such, the United States Supreme Court has stressed a determination of whether qualified immunity applies should be resolved "at the earliest possible stage in litigation." *Id.* (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)).

At the motion to dismiss stage, the Court must consider (1) "whether the plaintiff has stated a plausible claim for violation of a constitutional or statutory right," and (2) "whether the right was clearly established at the time of the alleged infraction." *Dadd v. Anoka Cnty.*, 827 F.3d 749, 754-55 (8th Cir. 2016) (quoting *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013)); *see also Dabbs v. Lombardi*, No. 17-CV-4255-SRB, 2019 WL 2996920 at *3 (W.D. Mo. July 9, 2019) (citation omitted) (recognizing that at the dismissal stage, the issue is whether plaintiff has pleaded facts that allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct). "District courts have discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

### 1. Establishment of Constitutional or Statutory Rights

Plaintiff alleges his "rights were violated under the Fourth Amendment made applicable to the states via the Fourteenth Amendment pursuant to 42 U.S.C. § 1983, in that he was subjected to unreasonable force by the Defendant Knudsen." Doc. 25 at 11. He also alleges Knudsen's conduct "deprived Plaintiff of his right to medical care and treatment in violation of 42 U.S.C. § 1983 and the Fourteenth Amendment." *Id*. at 16. A right is considered "clearly established" when it is "sufficiently clear that a reasonable official would understand what he is doing violates a right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). Existing precedent must demonstrate the constitutional or statutory right is "beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

12

"The Fourth Amendment protects citizens from being seized through excessive force by law enforcement officers." *Mettler v. Whitledge*, 165 F.3d 1197, 1202 (8th Cir. 1999) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Further, the Fourteenth Amendment guarantees pretrial detainees in county jail "at least as many protections" as the Eighth Amendment right against cruel and unusual punishment.[8] *Hott v. Hennepin Cnty*, 260 F.3d 901, 905 (8th Cir. 2001) (citations omitted). Both the Fourth Amendment right against excessive and unreasonable force and the Fourteenth Amendment right against cruel and unusual punishment for pretrial detainees were clearly established well before 2018, when the alleged events in this matter transpired. Accordingly, the Court finds Plaintiff alleges Knudsen violated clearly established constitutional rights.

### 2. Alleged Violations of Constitutional or Statutory Rights

The Court must also determine "whether plaintiff 'pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the [violations] alleged.'" *Stanley v. Finnegan*, 899 F.3d 623, 626 n.2 (8th Cir. 2018) (internal citations and quotations omitted); *see also Dabbs*, 2019 WL 2996920 at *3. The Court analyzes Plaintiff's allegations that Knudsen violated his Fourth Amendment right to be free from excessive and unreasonable force and Fourteenth Amendment right by depriving him of adequate medical care.

#### (a) Excessive or Unreasonable Use of Force

"To establish a constitutional violation under the Fourth Amendment's right to be free from excessive force, the test is whether the amount of force used was objectively reasonable under the particular circumstances." *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009)

---

[8] "Pretrial detainee § 1983 claims are analyzed under the Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment prohibition against cruel and unusual punishment." *Holden v. Hirner*, 663 F.3d 336, 340-41 (8th Cir. 2011).

13

(citations omitted). Reasonableness of an officer's use of force is evaluated "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. (quoting *Graham*, 490 U.S. at 396). "Circumstances relevant to the reasonableness of the officer's conduct include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id*. (internal quotations and citation omitted). It is also clearly established that "force is least justified against nonviolent misdemeanants who do not flee or actively resist arrest and pose little or no threat to the security of the officers or the public." *Id*. at 499 (citation omitted).

Plaintiff alleges "he was subjected to excessive and unreasonable force by [ . . . ] Defendant Knudsen." Doc. 25 at 11. The Amended Complaint states Knudsen and Sticken arrived on scene because "as Plaintiff was entering the bus to go home, he had a bowel movement and the bus operat[or] contacted law enforcement." *Id*. at 9. Plaintiff further claims "Knudsen and Sticken insisted . . . Plaintiff leave the confines of the bus shelter and walk home" and told him he would be charged with trespassing if he failed to do so. *Id*. at 7, 9. In response, Plaintiff attempted to explain he was physically unable to walk the ten blocks to his home because he was born with cerebral palsy, which affects his physical mobility. *Id*. at 7, 10. Knudsen still "insisted Plaintiff leave the bus shelter." *Id*. at 7.

Plaintiff maintains he extended his arms forward and asked the officers for help off the bus shelter seat. *Id*. at 7. But "Knudsen and Sticken snatched . . . Plaintiff and body slammed [him] to the ground[,] knocking [Plaintiff's] eyeglass[es] from his face and his right shoe from his foot while telling him he was [']tired of you people['] apparently referring to Plaintiff's disability." *Id*. at 10. Knudsen "then knelt on the right side of Plaintiff's back causing the fracture of his right

[side] ribs." *Id*. Plaintiff further avers he "was not a flight risk and posed no harm to Defendant Knudsen" as he was "73 at the time" and "disabled." *Id*. Plaintiff asserts "the force used to effectuate the [arrest] was not commensurate with the Plaintiff's conduct, [his] physical stature, [his] mobility, [nor] the nature of the crime." *Id*.

Based on the foregoing allegations, the Court finds Plaintiff's Amended Complaint alleges facts sufficient to state a plausible claim at this stage that Knudsen violated Plaintiff's Fourth Amendment right to be free from excessive and unreasonable force.

### (b) Inadequate Medical Care

To state a claim for inadequate medical care under the Eighth or Fourteenth Amendments, a detainee must plead facts sufficient to indicate a deliberate indifference to serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Bryant v. Cnty. of Cape Girardeau*, No. 1:18-CV-117 RLW, 2019 WL 2605593, at *2 (E.D. Mo. June 25, 2019). To state a claim for deliberate indifference to a serious medical need, a plaintiff must show "he suffered from one or more objectively serious medical needs," and officers "actually knew of but deliberately disregarded those needs." *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019); *see also Betts v. Jackson Cnty.*, No. 4:21-CV-00023-DGK, 2022 WL 605620, at *10 (W.D. Mo. Mar. 1, 2022).

An objectively serious medical need is "either obvious to the layperson or supported by medical evidence, like a physician's diagnosis." *Roberts*, 917 F.3d at 1042 (citation omitted). Plaintiff must also demonstrate the officers actually knew he faced a risk of serious harm and failed to respond reasonably to that risk. *Id*. Here, Plaintiff alleges Knudsen and Sticken "body slammed [him] to the ground" and "knelt on him" resulting in the fracture of his ribs and a knee injury. Doc. 25 at 10. Further, Plaintiff alleges he informed Knudsen he was "in pain from his injuries and requested medical services." *Id*. at 16. He claims Knudsen denied his requests for medical care,

and as a result, "Plaintiff's injury was exacerbated because of lack of treatment." *Id*. Based on the foregoing allegations, the Court finds Plaintiff's Amended Complaint alleges facts sufficient to state a plausible claim that Knudsen violated Plaintiff's Fourteenth Amendment rights by failing to provide adequate medical care.

When construing all factual allegations in Plaintiff's Complaint as true and drawing all inferences in the light most favorable to Plaintiff, the Court finds Plaintiff alleges sufficient facts to state a plausible claim that Knudsen violated his clearly established constitutional rights. The Court finds qualified immunity has not been established on the face of the Complaint. Therefore, the Court **DENIES** Knudsen's request to dismiss all claims against him on the basis of qualified immunity.

### IV. CONCLUSION

Based on the foregoing discussion, the motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS SO ORDERED.**

DATE: June 18, 2024
　　　　　　　　　　　　　　　　　　　　　*/s/ W. Brian Gaddy*
　　　　　　　　　　　　　　　　　　　　　W. BRIAN GADDY
　　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE